IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Fernando Francisco Young, | ) | C/A No. 0:14-3457-DCN-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Edsel T. Taylor, *Warden*, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Fernando Francisco Young, a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 26.) Pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), Young was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 27.) Young filed a response in opposition. (ECF No. 29.) Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion for summary judgment should be granted and Young's Petition denied.

## BACKGROUND

Young was indicted in November 2008 in Charleston County for assault and battery with intent to kill (2008-GS-10-8484). (App. at 93-94, ECF No. 25-1 at 95-96.) Young was represented by Lori Proctor, Esquire, and on August 26, 2010 pled guilty as charged. The circuit court sentenced Young to fifteen-years' imprisonment. (App. at 21, ECF No. 25-1 at 23.) Young did not appeal his plea or sentence.

Young filed a *pro se* application for post-conviction relief ("PCR") on March 2, 2011 in which he raised the following claims:

(a)    Involuntary and unintentionally plea:  Counsel advise me to plea[d] guilty

(b)    Indictment violate due process:  Indictment don't have elements for the crime assault and battery with intent to kill[.]

(See Young v. State of South Carolina, 11-CP-10-1593; App. at 23-29, ECF No. 25-1 at 25-32) (errors in original).  The State filed a return.  (App. at 31-35, ECF No. 25-1 at 33-37.)  On September 15, 2011, the PCR court held an evidentiary hearing at which Young appeared and testified and was represented by Prentiss Counts Shealy, Esquire.  By order filed November 29, 2011, the PCR court denied and dismissed with prejudice Young's PCR application.  (App. at 80-91, ECF No. 25-1 at 82-93.)

On appeal, Young was represented by Dayne C. Phillips, Esquire, of the South Carolina Commission on Indigent Defense, who filed a petition for a writ of certiorari on Young's behalf that presented the following questions:

I.    Did the PCR court err in refusing to grant PCR counsel's motion for funds to acquire a copy of Petitioner's trial transcript where Petitioner had pleaded guilty prior to the close of the State's case and PCR counsel only had a copy of the guilty plea transcript thereby denying Petitioner his due process and equal protection rights under the Fourteenth Amendment?

II.    Did the PCR court err in finding Petitioner knowingly, voluntarily, and intelligently pled guilty where plea counsel coerced Petitioner into pleading guilty by telling Petitioner that based on his conversations with the trial judge, Petitioner would receive the maximum sentence of twenty years in prison if he did not plead guilty?

(ECF No. 25-2.)  The State filed a return.  (ECF No. 25-3)  On June 23, 2014, the South Carolina

Court of Appeals issued an order denying Young's petition for a writ of certiorari.  (ECF No. 25-4.)

The remittitur was issued July 14, 2014.  (ECF No. 25-5.)  This action followed.

## FEDERAL HABEAS ISSUES

Young's federal Petition for a writ of habeas corpus raises the following issues:

**Ground One:**  Was trial counsel ineffective for failure to adequately prepare for trial.
**Supporting Facts:**  Petitioner, Young, would respectfully argue that the transcript of his trial was needed during his evidentiary hearing before Judge Nicholson and that as a direct and proximate cause of not being able to present pertinent evidence he was prejudiced by the PCR Court's decision and that in denying him the exclusive right to due process of the law and/or equal protection, the court did not by so doing give him the opportunity to sufficiently challenge the State's allegation against him and by [so not doing] the PCR Court demonstrated by its very actions or in-actions extreme bias, since an introduction of the trial transcript of the recorded could have greatly and significantly benefitted Petitioner Young.

**Ground Two:**  The trial court lacked jurisdiction to convict Petioner (Petitioner) of ABWIK without evidence.
**Supporting Facts:**  Police never upon arresting Petitioner Young had any evidence that he had shot the alleged victim Quintin Grant.  There were no gunshot residue found on Petitioner Youngs hands or clothing to prove beyond even a reasonable doubt.  Because the State alleged a gun was used and never presented a weapon to the Jury or had any evidence (physical evidence) Petitioner committed the crime alleged the Court (trial court) lacked jurisdiction to convict Petitioner.

**Ground Three:**  Whether Petitioners plea counsel was ineffective for coercing him to plea before victim was to testify.
**Supporting Facts:**  Plea counsel tricked and/or coerced him to enter the plea.  Right before victim was to testify the judge called trial counsel and solicitor into chambers.  She alleged the trial judge stated the case [wasn't] looking good and that it would be best for him to plead or he was going to sentence him to the maximum.

**Ground Four:**  Did the PCR Court err in refusing to grant PCR counsel's motion for funds to acquire trial transcript.
**Supporting Facts:**  Petitioner, Young had entered a plea of guilt prior to the close of the State's case and the PCR attorney had only a copy of the guilty plea transcript, thereby causing Petitioner, Young to be denied his right to due process of the law and equal protection that's guaranteed by the Fourteenth Amendment of the Constitution.



**Ground Five:** Did the PCR Court err in finding Petitioner knowingly, voluntarily, and intelligently pled guilty where plea counsel coerced Petitioner into pleading guilty by telling him that based on conversations with the trial judge, petitioner would receive the maximum sentence of twenty (20) years in prison, if he did not plead guilty.

**Ground Six:** Did the lower court commit reversible error and/or demonstrated extreme bias when denying Petitioner, Young the right to introduce and/or present his trial transcript during the evidentiary hearing.

**Ground Seven:** Whether Petitioner, Young is entitled to and/or should be granted a new trial/ on the merits challenging the alleged sufficiency of the States supposed evidence.

**Ground Eight:** Whether Petitioner Young is entitled to receive the lesser included offense of Assault and Battery of a High and Aggravated Nature (ABHAN).
**Supporting Facts:** Petitioner Young, respectfully states that without validly-sufficient evidence he had shot the alleged victim, the State could not have proven the ABWIK offense. It was counsel's disposition that due to a lack of evidence in the case (physical evidence) that the offense that would go to the jury would be the ABHAN and that Petitioner would not just be offered it during the course of a plea of guilt. Petitioner, Young would respectfully ask and/or inform the Honorable Court that he seeks to be allowed the opportunity to plead to the lesser included offense if this petition for a writ of habeas corpus is granted.

(Pet., ECF No. 1) (alterations and errors in original).

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary



judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly



established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 562 U.S. 86, 100 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 562 U.S. at 103). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Harrington,



562 U.S. at 101. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

## C.    Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner



must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.  Summary Judgment Motion**

**1.  Claims that are not Cognizable (Grounds Two, Four, Six, and Eight)**

In Ground Two, Young alleges that the trial court lacked jurisdiction to convict Young because of insufficient evidence. In Ground Four, Young alleges that his Fourteenth Amendment rights were violated by the PCR court's refusal to grant PCR counsel's motion for funds to acquire the trial transcript. In Ground Six, Young argues that the PCR court erred in denying Young the right to introduce and/or present his trial transcript during the PCR hearing. In Ground Eight, Young appears to seek to plead to Assault and Battery of a High and Aggravated Nature (ABHAN) based on the evidence in his case. The respondent argues that none of these claims are cognizable on federal habeas review as they do not involve improper application of federal law and/or fail to state



claims upon which relief may be granted.  Young's response does not challenge the respondent's argument that these grounds fail to state cognizable federal habeas claims.

"[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts," Wilson v. Corcoran, 562 U.S. 1, 4 (2010) (emphasis in original), and "it is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Pulley v. Harris, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.").  Further, with regard to Ground Two, whether the state court lacked jurisdiction is a question of state law, which is not cognizable in this federal habeas action. See Wright v. Angelone, 151 F.3d 151, 158 (4th Cir. 1998) (concluding that because a petitioner's allegations that the circuit court lacked jurisdiction over certain counts of an indictment rested solely upon interpretation of state laws, it was not cognizable on federal habeas review absent a showing of "complete miscarriage of justice"); see also Estelle, 502 U.S. at 67-68.  Although Young generally alleges that the state court lacked jurisdiction because the State failed to produce evidence of gunshot residue on Young's hands or clothing and failed to present any weapon used for the commission of the crime, such issues do not implicate federal habeas review.  Moreover, he has failed to show that the state court's actions resulted in a "complete miscarriage of justice," especially in light of the fact that Young pled guilty to the charge.  See Wright, 151 F.3d at 158.

In Ground Four, Young alleges that his Fourteenth Amendment rights were violated by the PCR court's refusal to grant PCR counsel's motion for funds to acquire the trial transcript.  Further, in Ground Six, Young argues that the PCR court erred in denying Young the right to introduce and/or present his trial transcript during the PCR hearing.  However, claims of errors or irregularities



in the PCR process rather than the conviction or sentence are not matters that may be addressed in

a federal habeas corpus action. See Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (holding

that errors and irregularities in connection with state post-conviction proceedings are not cognizable

on federal habeas review), cited in Wright v. Angelone, 151 F.3d 151 (4th Cir. 1998).

Finally, in Ground Eight, Young appears to seek to plead guilty to Assault and Battery of a

High and Aggravated Nature (ABHAN) based on the evidence in his case. Young has failed to

allege in this ground that "he is in custody in violation of the Constitution or laws or treaties of the

United States." 28 U.S.C. § 2254(a). Thus, this claim is not cognizable on federal habeas review.

Accordingly, the court finds that the respondent's motion for summary judgment should be

granted as to Grounds Two, Four, Six, and Eight of Young's Petition.

### 2.    Procedural Default (Grounds One and Seven)

The respondent argues that several of the grounds presented in this Petition are procedurally

barred from federal habeas review. Of the cognizable claims remaining before the court, the

respondent argues Ground One and Ground Seven are procedurally barred. With regard to Ground

One, although the PCR court's order denying relief addressed the issue of whether plea counsel was

ineffective for failing to adequately prepare for trial, Young did not present this issue to the state

appellate court during his PCR appeal. Young's allegations in Ground Seven challenging the

sufficiency of the evidence were not presented either to the lower state court or as an issue on appeal.

In fact, as indicated above, Young pled guilty to assault and battery with intent to kill, thus waiving

any attack on the factual basis of the plea under state law. See Cureton v. Rushton, C/A No. 4:06-

1683-RBH, 2007 WL 528054, at *15 (D.S.C. Feb. 14, 2007) ("A guilty plea waives nearly all

non-jurisdictional claims with the exception of ineffective assistance of defense counsel and the



voluntariness of the plea.") (citing <u>Johnson v. Catoe</u>, 520 S.E.2d 617, 619 (S.C. 1999); <u>Gibson v. State</u>, 514 S.E.2d 320, 324 (S.C. 1999)); <u>see also</u> <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . .").  Upon review of the record, the court agrees that Grounds One and Seven are procedurally defaulted.[1]  <u>See</u> <u>Coleman</u>, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); <u>Picard v. Connor</u>, 404 U.S. 270, 275-76 (1971) (stating that to exhaust state remedies, a petitioner's "federal claim must be fairly presented to the state courts" to give the state courts "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding").  Moreover, these grounds would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules if Young attempted to raise them now.  <u>See</u> <u>Lawrence</u>, 517 F.3d at 714; <u>Longworth</u>, 377 F.3d 437; <u>see also</u> <u>Coleman</u>, 501 U.S. 722.

While the court finds that Grounds One and Seven are procedurally defaulted, or barred from federal habeas review, such claims may nonetheless be considered by a federal court if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750.  A petitioner may establish a fundamental

---

[1] To the extent that Grounds Two and Eight may also be construed as asserting claims challenging the sufficiency of the evidence, these claims are procedurally barred for the same reasons as Ground Seven.



miscarriage of justice by showing that he is actually innocent of the crime for which he was convicted. However, to establish "actual innocence," a petitioner must produce new reliable evidence that was not presented at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999); see also Schlup v. Delo, 513 U.S. 298, 324, 327 (1995) (stating that to demonstrate "actual innocence," a petitioner must present "new reliable evidence . . . that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt"). Young's response in opposition to the respondent's motion for summary judgment provides no arguments to meet this standard and fails to demonstrate that, based on any new reliable evidence, it is more likely than not that no reasonable juror would have found him guilty. See Schlup, 513 U.S. at 327-29. Accordingly, Young's claim of ineffective assistance based on plea counsel's failure to adequately prepare for trial and his claims challenging the sufficiency of the evidence are procedurally barred from federal habeas review, and the respondent's motion for summary judgment should be granted as to those grounds.

### 3.     Merits (Grounds Three and Five)

Grounds Three and Five essentially assert the same allegation of error which was denied by the PCR court and certiorari review of this issue was denied by the South Carolina Court of Appeals. In Grounds Three and Five, Young argues that plea counsel was ineffective by coercing him to enter a guilty plea by informing him, following a meeting with the trial judge, that the judge stated that the case was not looking good and that it would be best for him to plead guilty or he was going to get the maximum sentence.

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated



in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of Strickland, a petitioner must show that plea counsel's errors were so serious that her performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. However, to prevail on a claim of ineffective assistance of counsel in connection with a guilty plea, the Strickland test is "some what different." Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000). To establish the prejudice prong of the Strickland test, a habeas petitioner who pleaded guilty must show " 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " Id. (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)) (discussing the Strickland v. Washington standard to establish ineffectiveness of counsel in the context of a guilty plea).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 562 U.S. at 105. The Court observed that while " '[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under Strickland and § 2254(d)

are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

The Supreme Court has held that a decision containing a reasoned explanation is not required from the state court. As stated above, if no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. In the case at bar, this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Court of Appeals, which may provide reasons or theories that the appellate court could have relied upon in summarily denying Young's petition. Therefore, the court will first consider whether the PCR court's order unreasonably misapplied federal law or was based on an unreasonable determination of the facts. Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland/Hill test in determining that no Sixth Amendment violation occurred.

In the Order of Dismissal, the PCR court first summarized the testimony of Young and his plea counsel from the PCR hearing as follows. Young testified that he first met with plea counsel five to six months after Young's arrest and met with counsel six or seven more times before trial. Young stated that he did not want to accept the State's only plea offer, which was for fifteen years. Young alleged that he discussed going to trial with counsel but that counsel failed to advise him of any potential defenses and stated that he did not give counsel names of any people to interview.



Young testified that he learned of the trial date the week before trial and counsel did not go over the discovery with him, rather she mailed it to him. Young stated that when he discussed his right to testify and his prior record with counsel, she informed him that "it would not help to testify at trial, but she said he could testify if he wanted to." (App. at 82, ECF No. 25-1 at 84.) Young alleged that counsel failed to move for a bond reduction or file a speedy trial motion despite his request. Young stated that he did not have a preliminary hearing and that his motion to have counsel relieved was never heard as he was placed on the trial docket for the week after he filed the motion.

Young alleged that "counsel did not go over the indictment, the elements of the offenses, or the witness statement from Jelani Redding with him. He testified she gave him a copy of the indictment and told him to look over the witness statement and tell her what he disagreed with." (Id.) Young stated that counsel's prior representation of Young's cousin in a murder trial was a conflict of interest. Young "testified the 911 tape was subpoenaed by counsel, but she could not get a copy. He asserted a dispatcher informed counsel the tape was erased due to the []lapse in time; therefore, the 911 tape was not introduced at trial." (Id.) Young stated that his clothes were not tested for gunpowder residue. Young testified that after six witnesses had testified at his trial and right before the victim testified, "counsel told him the judge advised it was not looking good and he will probably get the maximum sentence of twenty (20) years. He testified counsel told him he could get fifteen (15) years if he pled guilty, so he felt coerced to plead guilty. Applicant asserted counsel informed him the judge would only accept the plea if he agreed with everything asked." (Id.)

Plea counsel testified at the hearing that she discussed with Young his right to testify and Young "always said he did not want to testify. She testified she did not advise him not to testify, and if he wanted to testify, she would have had him do so." (App. at 83, ECF No. 25-1 at 85.) Counsel



explained that Young's wife planned on testifying that she did not see Young with a gun, but at the last minute his wife "decided not to testify because she was not present at the time of the shooting and did not want to be arrested for perjury." (Id.) Counsel stated that Young's defense was that he did not do it. However, counsel "asserted there was a pre-trial Neil v. Biggers hearing, at which time she had the full opportunity to cross-examine the victim. She testified that on the night of the shooting, the victim pointed to where the shooter lived, but she was unsure if the victim pointed out Applicant at the pretrial hearing." (Id.) Counsel also stated that an eye witness was located two weeks prior to trial. "Counsel testified she reviewed all discovery, the witness statement, the indictment, the elements of ABWIK, and potential defenses with [Young]." (Id.) Counsel stated that she did not recall any defects in the indictment; it was Young's decision to reject the State's offer of fifteen years; and it was Young's decision to ultimately plead guilty (a decision with which Young's wife was in agreement). Counsel denied coercing Young to plead guilty and asserted that she met with Young on several occasions, especially right before trial, and was prepared for trial.

Plea counsel stated that she or co-counsel cross-examined each witness and questioned them regarding their credibility. Counsel testified the State had recorded its interview with Ms. Redding so counsel knew what she was going to say. Counsel asserted that the only witness Young provided was his wife; that she reviewed the discovery with Young and denied merely mailing it to him; and that Young had no viable defenses except to argue he was not there. Further, counsel stated that she was not sure which cousin she represented or why it would be a conflict. Counsel testified that she did not file a speedy trial motion. Counsel explained that the difficulty in getting Young's bond reduced was the fact that he was serving a one-year work release in family court when this incident

occurred. Counsel also testified that Young threw his jumpsuit into a bag with other clothes, so law enforcement was unable to test his clothing for gunshot residue. Counsel stated that although she waived the preliminary hearing, she spoke with the officer at length and that a preliminary hearing would not have made any appreciable difference in the outcome of the case. Counsel testified that Young's wife called 911 after the victim and a cousin came to their house alleging Young's dog bit them and became boisterous. Finally, counsel stated that she probably did tell Young he would receive twenty years if he was convicted at trial because it was not looking good at trial, explaining that the victim was paralyzed and in a wheelchair as a result of the shooting. Counsel did not believe Young had a chance of winning at trial. (See App. at 83-84, ECF No. 25-1 at 85-86.)

As an initial matter, in denying and dismissing Young's application, the PCR court found plea counsel's testimony to be credible, and Young's testimony not credible. (App. at 86, ECF No. 25-1 at 88.) Young has failed to challenge these findings and therefore has not provided any information to clearly show that the credibility determination in the PCR court's order is without support. See Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) and Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)).

Further, the PCR court considered and rejected each of Young's allegations of counsel error. With regard to Young's allegation that plea counsel was ineffective by coercing him to enter a guilty plea by informing him following a meeting with the trial judge that the judge stated that the case was not looking good and that it would be best for him to plead guilty or he was going to get the maximum sentence, the PCR court reasonably found that Young's plea was entered freely,



voluntarily, knowingly, and intelligently.  The PCR court reviewed in detail the plea colloquy, including Young's understanding that he was giving up certain constitutional rights and that the State bears the burden of proofing Young guilty beyond a reasonable doubt at trial.  Young also indicated that no one had threatened him or promised him anything in return for pleading guilty; that he wished to plead guilty rather than continue with the trial; that he was pleading guilty of his own free will; that he had adequate time to make the decision; and that he was satisfied with counsel's performance. (App. at 86, ECF No. 25-1 at 88.)  The PCR reasonably found that "it was Applicant's decision to plead guilty with a full understanding of the consequences of the plea." (App. at 87, ECF NO. 25-1 at 89.)

Further, the PCR court reasonably found based on the record before the court that "it was ultimately Applicant's decision to plead guilty before the conclusion of his trial, and counsel did not coerce him to make that decision."  (App. at 88, ECF No. 25-1 at 90.)  Specifically, the PCR court stated that

> [t]his Court finds Applicant received the best of a bad situation.  The transcript corroborates the victim was able to identify the Applicant, and an eye witness saw Applicant with a weapon.  Further, the victim is a partial paraplegic who was wheelchair bound at the time of the trial and guilty plea.  The victim testified at the guilty plea he was in constant pain, lost the use of one of his lungs, his liver was going bad, he still had fragments of a bullet in his back and spine, and it was unlikely he would fully walk again.  This Court finds counsel credible in that she did the best she could to mitigate a bad situation.

(Id.)  Thus, the PCR court reasonably concluded that Young "failed to prove the first prong of the Strickland test, specifically that counsel failed to render reasonably effective assistance under prevailing professional norms" where Young "failed to present specific and compelling evidence that counsel committed either errors or omissions in her representation of the Applicant" or "show that



counsel's performance was deficient." (App. at 89, ECF No. 25-1 at 91.) The PCR court further reasonably held that Young "failed to prove the second prong of Strickland, specifically that he was prejudiced by plea counsel's performance." (Id.)

Upon thorough review of the parties' briefs and the record in this matter, the court finds the PCR court's analysis to be reasonable and concludes that Young cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting this claim or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). Thus, Young cannot show "there was no reasonable basis" for the state appellate court to deny relief. Harrington, 562 U.S. at 98. As observed by the Harrington court, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 562 U.S. at 101.

In response to the respondent's motion for summary judgment, Young generally challenges the sufficiency of the evidence and argues that his counsel was ineffective without specifically addressing this claim. Upon careful review of the record and the PCR court's order, for all of the reasons discussed by the PCR court, the court concludes that Young has failed to establish that plea counsel's actions were error, much less that they were objectively unreasonable such that it rendered her performance deficient. Young's arguments fail to demonstrate that any of the PCR court's findings were unreasonable nor have they shown that the PCR court's analysis of these issues misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 410; see also Harrington, 562 U.S. at 101. Accordingly, the respondent's motion for summary judgment should be granted as to Grounds Three and Five.



**RECOMMENDATION**

For the foregoing reasons, the court recommends that the respondent's motion for summary

judgment (ECF No. 26) be granted and Young's Petition denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 18, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).